**EATON CITY SCHOOL DISTRICT BOARD OF EDUCATION, Appellant,**

v.

**STATE EMPLOYMENT RELATIONS BOARD et al., Appellees.**

[Cite as *Eaton City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1991), 71 Ohio App.3d 783.]

Court of Appeals of Ohio,
Preble County.

No. CA90–09–018.

Decided April 8, 1991.

*Ennis, Roberts & Fischer Co., L.P.A.,* and *J. Michael Fischer,* for appellant.

*Lee Fisher,* Attorney General, and *Barbara A. Serve,* for appellee State Employment Relations Board.

*Snyder, Rakay & Spicer* and *Peter J. Rakay,* for appellee Eaton Classroom Teachers Association.

---

KOEHLER, Judge.

Appellant, Eaton City School District Board of Education ("board"), appeals a decision of the Preble County Court of Common Pleas which affirmed a decision of appellee, State Employment Relations Board ("SERB"), holding that the board committed an unfair labor practice.

On October 30, 1987, Eaton Classroom Teachers Association ("ECTA") filed an unfair labor practice charge against the board, alleging that it had failed to bargain in good faith regarding its decision to abolish two teaching positions in violation of R.C. 4117.11(A)(1) and (A)(5). SERB investigated the charge and determined that there was probable cause to believe that the board had committed an unfair labor practice. It issued a complaint against the board on August 29, 1988. Subsequently, ECTA, as the charging party, was permitted to intervene in the proceedings.

The parties submitted the matter to the hearing officer on stipulated facts and exhibits. The pertinent facts are as follows:

Two teachers employed by the board, Jean Alexander and Edsel Brooks, retired at the end of the 1986–1987 school year. During that school year, Alexander taught six periods of social studies to eighth grade students and Brooks taught six periods of social studies to seventh grade students. Although the board hired three new teachers for the 1987–1988 school year, it did not hire any new teachers to teach the social studies classes previously taught by Alexander and Brooks. Instead, the board assigned four teachers to teach the classes who had not previously taught them.

The stipulations set forth the class assignments for these other teachers for both the 1986–1987 and 1987–1988 school years. Essentially, they show that because these teachers had not previously taught these social studies classes, they needed to spend more time per day on preparation. They also show that because of the reassignment of classes, they were required to teach more students than in the previous year. Nevertheless the scheduled work day was the same in both 1986–1987 and 1987–1988.

The parties also stipulated that there had been occasions in the past when the board did not employ a new teacher for the specific purpose of replacing a retiring teacher. Further, it was not uncommon for a teacher to be assigned to teach a subject that the teacher did not teach the preceding year. The teaching assignment given to the teachers identified in the stipulations were not prohibited by the collective bargaining agreement between ECTA and the board.

On June 15, 1987, ECTA asked the board to reconsider its decision not to replace Alexander and Brooks. Shortly thereafter, the board abolished the positions formerly held by Alexander and Brooks. On September 22, 1987, ECTA made a formal demand to bargain over the decision to abolish the positions. After seeking legal advice, the board informed ECTA that it did not intend to bargain over this matter because it was not required to under the law.

After reviewing the stipulations and the memoranda of the parties, the hearing officer concluded that the board's unilateral decision to abolish the social studies teaching positions constituted an unfair labor practice in violation of R.C. 4117.11(A)(1) and (A)(5). The board filed exceptions to the hearing officer's decision. SERB adopted the hearing officer's findings of facts, conclusions of law and recommendations and affirmed his decision without opinion.

On April 2, 1990, the board filed a notice of appeal to the Preble County Court of Common Pleas. On September 5, 1990, the common pleas court affirmed SERB's decision, concluding that it was supported by substantial evidence. This appeal followed.

The board presents two assignments of error for review, as follows:

Assignment of Error No. 1:

"The trial court erred in finding that there is substantial evidence in the record to support appellee's order."

Assignment of Error No. 2:

"The trial court erred in failing to find that appellee's decision and order is contrary to law."

Because the parties argue these two assignments of error together, we will consider them together. The board argues that it is not required under R.C. 4117.08 to bargain over a decision which does not materially affect the wages, working hours or working conditions of its employees, and that a change in teaching assignments is not a change in the terms or conditions of employment. We find these assignments of error are not well taken.

We begin with a discussion of the standard of review to be applied to this case. In *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 533 N.E.2d 264, the Ohio Supreme Court held that the common pleas court's standard of review of a SERB decision on an unfair labor practice charge is whether there was substantial evidence to support that decision. Our role, as a court of appeals, is to determine if the trial court abused its discretion. Absent an abuse of discretion on the part of the common pleas court, the common pleas court's judgment must be affirmed. *Id.* at 260–261, 533 N.E.2d at 266–268. Additionally, " * * * courts must accord due deference to SERB's interpretation of R.C. Chapter 4117. Otherwise, there would be no purpose in creating a specialized administrative agency, such as SERB, to make determinations." *Lorain, supra,* 40 Ohio St.3d at 260, 533 N.E.2d at 267.

SERB determined that appellant committed an unfair labor practice pursuant to R.C. 4117.11, which provides:

"(A) It is an unfair labor practice for a public employer, its agents, or representatives to:

"(1) Interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code or an employee organization in the selection of its representative for the purposes of collective bargaining or the adjustment of grievances;

" * * *

"(5) Refuse to bargain collectively with the representative of his employees recognized as the exclusive representative or certified pursuant to Chapter 4117. of the Revised Code[.]"

R.C. 4117.08(C) sets forth various management rights reserved to the employer. It then states that an employer "is not required to bargain on subjects reserved to the management and direction of the governmental unit except as affect wages, hours, terms and conditions of employment * * *." Interpreting this section, the Supreme Court in *Lorain, supra,* concluded that if a public employer intends to implement a decision which "affects" wages, hours, terms and conditions of employment of a bargaining unit, the employer must bargain on the issue even if the question is reserved for managerial discretion. *Id.,* 40 Ohio St.3d at 261, 533 N.E.2d at 267.

The determination of whether a public employer's unilateral action affects wages, hours, terms and conditions of employment is a factual question to be determined by SERB, "which was designated by the General Assembly to facilitate an amicable, comprehensive, effective labor-management relationship between public employees and employers." *Id.* at 260, 533 N.E.2d at 266.

In the instant case, the hearing officer concluded that the board's decision not to replace the two retiring teachers caused at least some teachers to experience "additional responsibilities including a greater number of students to teach as well as additional (teaching) class periods during the course of a day." Therefore, the decision "affected the terms and conditions of employment" of bargaining unit members. We find that there was substantial evidence to support this finding of fact and we cannot substitute our judgment for that of the agency, regardless of whether we would have held otherwise.

In sum, we hold that there was substantial evidence to support SERB's conclusion that the board committed an unfair labor practice. Accordingly, we find no abuse of discretion by the trial court in affirming SERB's decision. The board's first and second assignments of error are overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG, J., concurs.

JONES, P.J., dissents.

JONES, Judge, dissenting.

The majority holding is shocking. Unless reversed by the Ohio Supreme Court, the ramifications are awesome to consider. This court is essentially determining that the superintendent of a school district is without authority to direct and assign teachers in their classroom duties although such superintendents are granted such authority, and charged with the responsibility of exercising such authority, by statute. R.C. 3319.01.

The scenario herein is quite simple—even absurd. Two social studies teachers retired. Their teaching assignments were assigned to other teachers who happened to be members of the Eaton Classroom Teachers Association. The newly assigned teachers complained, not because their classroom hours were increased, or their salaries were decreased, or their working conditions were changed. They obviously decided they didn't want to teach social studies. It is apparent the disgruntled teachers contend they have the inherent right to determine their teaching assignments, or, at the very least, that the matter of teaching assignments is subject to collective bargaining. Significantly, however, the parties stipulated that the change in the teaching assignments of the teachers to whom the classes taught by the retiring teachers were distributed did not violate the collective bargaining agreement.

Clearly, therefore, the board was not required to bargain regarding the matter of teaching assignments, and it follows that the board was not guilty of an unfair labor practice in refusing to do so. The collective bargaining

agreement extant when this controversy arose does not obligate the board to bargain over the exercise of a management right recognized by the agreement.

The majority's reliance upon *Lorain, supra,* is misplaced. In *Lorain,* the Supreme Court analyzed the facts to determine if the employer's actions had a "material effect" on the working conditions of the employees and the bargaining unit involved in that case. In *Lorain,* when several certificated nurses in the bargaining unit retired, the board of education did not replace the retiring nurses with other nurses, but with non-certificated employees, *i.e.,* with employees who would not be in the bargaining unit. Stated differently, the board of education in Lorain attempted to abolish, and remove a specific classification, nurses, from the bargaining unit. Moreover, the abolishment of the nurse position from the bargaining unit resulted in other bargaining unit employees having to perform additional duties which were not part of their normal duties and which they had not previously had to perform.

None of the factors upon which the Supreme Court relied in *Lorain* is present in this case. The record herein establishes that no bargaining unit positions were eliminated and the bargaining unit was not reduced. Two teachers retired and two new teachers were hired. The record further establishes that no non-bargaining unit employees were hired to perform any of the duties performed by the retiring teachers, and none of the duties performed by the retiring teachers was assigned to any non-bargaining unit employees. Additionally, and most important, the record establishes that no bargaining unit employee was required or assigned to perform duties not previously performed, or to perform duties which were not a part of the employee's normal teaching duties.

R.C. 4117.08 was enacted to protect the rights of management. SERB's interpretation of such section, under the facts of this case, virtually extinguishes such rights. The SERB decision is not supported by the evidence and is contrary to law. I vigorously dissent.